J-S10043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: E.J.B.C., A MINOR : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
APPEAL OF: T.C., MOTHER : No. 2929 EDA 2014

Appeal from the Decree September 18, 2014
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): CP-51-AP-0000236-2014

IN THE INTEREST OF: J.A.H., A MINOR : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
APPEAL OF: T.C.C., MOTHER : No. 2937 EDA 2014

Appeal from the Decree September 18, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000237-2014; FID: 51-FN-002447-2012

IN THE INTEREST OF: E.C.C., A MINOR : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
APPEAL OF: T.C., MOTHER : No. 2994 EDA 2014

Appeal from the Decree Entered September 18, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000238-2014; FID: 51-FN-002447-2012

BEFORE: GANTMAN, P.J., STABILE, J., AND PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.: **FILED FEBRUARY 12, 2015**

Appellant, T.C. ("Mother"), appeals from the decrees entered in the

Philadelphia County Court of Common Pleas, which involuntarily terminated

_____

*Retired Senior Judge assigned to the Superior Court.

her parental rights to her minor children, E.C.C., E.J.B.C., and J.A.H. ("Children"). We affirm.

In its opinion, the trial court fully set forth the relevant facts of this case. Therefore, we have no reason to restate them. Procedurally, on May 19, 2014, the Philadelphia Department of Human Services ("DHS") filed three petitions for involuntary termination of Mother's parental rights to E.C.C., E.J.B.C., and J.A.H., respectively.[1] The court held a hearing on September 18, 2014. That same day, the court entered three decrees involuntarily terminating Mother's parental rights to Children. Mother filed a timely notice of appeal on October 14, 2014, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

Mother raises the following issues for our review:

> DID THE TRIAL [COURT] RULE IN ERROR THAT [DHS] [MET] ITS BURDEN OF PROOF THAT MOTHER'S PARENTAL RIGHTS TO HER CHILDREN SHOULD BE TERMINATED[?]
>
> DID THE TRIAL [COURT] RULE IN ERROR THAT THE TERMINATION OF MOTHER'S PARENTAL RIGHTS WOULD BEST SERVE THE NEEDS AND WELFARE OF THE CHILDREN[?]

(Mother's Brief at 4).

The standard and scope of review applicable in termination of parental rights cases are as follows:

> When reviewing an appeal from a decree terminating

---

[1] DHS also sought to terminate the parental rights of each child's father. All fathers' parental rights were terminated, but they are not parties to this appeal.

parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even though the record could support an opposite result.

*In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (internal citations omitted).

DHS sought the involuntary termination of Mother's parental rights on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a

period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*     \*     \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*     \*     \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*     \*     \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511. "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa.Super. 2010).

Under Section 2511(b), the court must consider whether termination will best serve the child's needs and welfare. *In re C.P.*, 901 A.2d 516 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child." *Id.* at 520. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P., supra* at 1121.

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be

considered unfit and may properly have…her rights terminated." ***In re B.L.L.***, 787 A.2d 1007, 1013 (Pa.Super. 2001).

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of…her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.
>
> Where a parent is incarcerated, the fact of incarceration does not, in itself, provide grounds for the termination of parental rights. However, a parent's responsibilities are not tolled during incarceration. The focus is on whether the parent utilized resources available while in prison to maintain a relationship with…her child. An incarcerated parent is expected to utilize all available resources to

foster a continuing close relationship with…her children.

***In re B.,N.M.***, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations and quotation marks omitted). "[A] parent's basic constitutional right to the custody and rearing of…her child is converted, upon the failure to fulfill…her parental duties, to the child's right to have proper parenting and fulfillment of…her potential in a permanent, healthy, safe environment." ***Id.*** at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Allan L. Tereshko, we conclude Mother's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (***See*** Trial Court Opinion, filed November 5, 2014, at 9-14) (finding: Mother has history of drug-related criminal offenses which have resulted in incarceration; Mother was incarcerated repeatedly during pendency of this matter; Mother failed to comply with Family Service Plan objectives; Mother failed to comply with parenting classes, resulting in her discharge from program; court has repeatedly ordered Mother to attend drug and alcohol assessments, but she attended only drug screens; numerous drug screens came back positive; Mother did not have appropriate housing when she was released from jail in March 2013, and again in May 2014; DHS provided Mother with referral for housing, but she did not complete programs; Mother failed to follow visitation schedule consistently;

her last visit with Children was on July 16, 2013; no strong bond existed between Mother and Children; DHS worker testified regarding lack of relationship between Mother and Children in contrast to parental bond that exists between Children and their foster parent; termination of Mother's parental rights would not cause Children irreparable harm; record demonstrates Mother's ongoing unwillingness to care for Children or perform any parental duties, and her failure to remedy conditions that led to termination of her parental rights; evidence is clear and convincing that termination of Mother's parental rights would be in best interests of Children).  Accordingly, we affirm on the basis of the trial court opinion.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/2015

## THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COUNTY

### IN THE COURT OF COMMON PLEAS

| | |
|---|---|
| **IN THE INTEREST OF:** : <br> **E.J.B.C.** : | **FAMILY COURT DIVISION** <br> **CP-51-AP-0000236-2014** |
| : | |
| **APPEAL OF:** : <br> **T.C.** : | |

| | |
|---|---|
| **IN THE INTEREST OF:** : <br> **J.A.H.** : | **CP-51-AP-0000237-2014** |
| : | |
| **APPEAL OF:** : <br> **T.C.** : | |

| | |
|---|---|
| **IN THE INTEREST OF:** : <br> **E.C.C.** : | **CP-51-AP-0000238-2014** |
| : | |
| **APPEAL OF:** : <br> **T.C.** : | |

## O P I N I O N

### PROCEDURAL HISTORY

On September 18, 2014, this Court held a hearing on the Petition to Terminate the Parental Rights of the biological mother of E.J.B.C., J.A.H. and E.C.C. The Petition was filed by the Department of Human Services ("DHS") and served on all parties. T.C. ("Mother") was present at the hearing and represented by counsel. After a full hearing on the merits, this Court found clear and convincing evidence to involuntarily terminate the parental rights of Mother, T.C. to E.J.B.C., J.A.H. and E.C.C.[1]

---

[1] F.S. ("J.A.H.'s Father") and R.B.'s ("E.J.B.C.'s Father") parental rights were terminated, but they have not appealed this Court's Order. E.C.C.'s unknown putative Father's rights were also terminated.

In response to the order terminating her parental rights, Mother, by and through her counsel, filed a Notice of Appeal with Matters Complained of on Appeal attached thereto on October 14, 2014. This appeal now follows.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

Mother's Statement of Matters Complained of on Appeal is set forth in its entirety as follows:

1. The Judge ruled in error that the Philadelphia City Solicitor's Office met its burden of proof;

2. The Judge ruled in error that it would be in the best interest and/or termination would best serve the needs of the child.

## FINDINGS OF FACT

On August 3, 2012, the Department of Human Services ("DHS") received an Emergency General Protective Services ("GPS") Report stating that E.C.C. sustained possible second degree burns on his upper body after removing hot food from a microwave oven. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The Report also stated that Mother refused to seek medical care for E.C.C.'s burns. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On August 4, 2012, DHS visited the family's home and met with A.V. ("Maternal Aunt"). (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). DHS developed a safety plan which provided that Maternal Aunt to take Mother and E.C.C. to the Emergency Room to have E.C.C.

2

examined. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

Between August 6, 2012 and August 15, 2012, DHS made numerous attempts to contact Mother. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Mother failed to respond. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On August 15, 2012, M.C. ("Maternal Grandmother") contacted DHS stating that E.C.C. had been examined at the emergency room and Mother was incarcerated at Riverside Correctional Facility. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Maternal Grandmother also informed DHS that only E.C.C. and J.A.H. were in her care. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). E.J.B.C. was in the care of a family friend. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On August 15, 2012, DHS visited Maternal Grandmother's home and deemed the home appropriate. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

At the Adjudicatory Hearing on September 13, 2012 held before the Honorable Thomas M. Nocella, E.C.C. and J.A.H. were adjudicated dependent and committed to DHS. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Judge Nocella further ordered that E.C.C. and J.A.H. to remain in the care of Maternal Grandmother and in the event Mother is released from prison, she will be referred to the Clinical Evaluation Unit ("CEU") for an assessment

3

and a forthwith drug screen. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On October 5, 2012, Maternal Grandmother contacted DHS stating that E.J.B.C. was in her care and she would like to receive kinship care assistance for him. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On October 10, 2012, DHS obtained an Order of Protective Custody ("OPC") for E.J.B.C. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

At the Shelter Care Hearing on October 11, 2012 held before the Honorable Thomas M. Nocella, the Court lifted the OPC and E.J.B.C.'s temporary commitment to DHS was ordered to stand. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Judge Nocella also ordered DHS to explore kinship care assistance for Maternal Grandmother. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

At the Adjudicatory Hearing on October 18, 2012 held before the Honorable Thomas M. Nocella, the Court discharged E.J.B.C.'s temporary commitment to DHS, and the child was adjudicated dependent and committed to DHS. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Judge Nocella further ordered that upon Mother's release from prison, she be referred to the CEU for a forthwith drug screen, assessment and monitoring. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

4

At the Permanency Review Hearing on October 19, 2012 held before the Honorable Thomas M. Nocella, the Court ordered E.J.B.C. remain as committed to DHS, and Maternal Grandmother was appropriate for kinship care. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

The initial Family Service Plan ("FSP") meeting was held on October 31, 2012, at which time the goal for the children was reunification. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The FSP Objectives for Mother were: 1) understand how and why the children were injured; 2) provide adequate and safe living conditions once released from prison; 3) follow through with a forthwith drug screen and monitoring once released from prison; 4) keep open communication with the provider agency; 5) participate in Achieving Reunification Center ("ARC") services; 6) inform DHS of their whereabouts upon release from prison; 7) be assessed by the CEU once released from prison; and 8) all fathers to make their identities and/or whereabouts known to DHS. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

At the Permanency Review Hearing on December 6, 2012 held before the Honorable Thomas M. Nocella, the Court ordered the children remain as committed to DHS. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Judge Nocella further ordered that the family comply with Family Group Decision Making and Mother be referred to the CEU for a forthwith drug screen and dual diagnosis assessment upon release from prison. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

5

On March 7, 2013, Mother rendered a positive urine screen for marijuana at CEU. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Mother did not stay for her assessment and failed to attend the rescheduled appointment on March 14, 2013. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On March 25, 2013, the CEU reported that Mother was non-compliant. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

At the Permanency Review Hearing on March 26, 2013 held before Juvenile Master Carol Carson, the Court ordered the children remain as committed to DHS. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The Court further ordered that Mother sign medical releases, sign for E.C.C.'s Individual Education Plan, and be referred to the CEU for a forthwith drug screen, assessment and monitoring. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On March 26, 2013, Mother rendered a positive urine screen for marijuana at the CEU. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On March 26, 2013, DHS held an FSP Revision Meeting, and the goal for the children remained unchanged. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Mother was present at the Revision Meeting. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The FSP Objectives established were: 1) complete parenting classes; 2) comply with the court ordered CEU assessment and

6

recommendations; 3) refrain from rendering positive drug screens; 4) maintain supervised weekly contact with the children at the provider agency; 5) make themselves available to sign authorization forms for medical and educational documentation; 6) locate and occupy suitable housing; 7) participate in ARC services; and 8) all fathers to make their identities and/or whereabouts known. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On April 17, 2013, Mother rendered a positive urine screen for marijuana at the CEU. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The CEU recommended that Mother engage in an intensive outpatient treatment program and was referred to Parkside Frankford. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On May 23, 2013, Mother failed to attend her scheduled intake appointment at New Directions. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On June 26, 2013, the CEU reported Mother non-complaint. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

At the Permanency Review Hearing on August 22, 2013 held before this Court, this Court referred Mother to the CEU for a forthwith drug screen, assessment and monitoring. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). This Court also ordered: 1) Mother complete parent training; 2) weekly supervised visits with the children continue at the provider agency and that visits may be modified by agreement of the parties; and 3)

7

Maternal Grandmother to be E.C.C.'s educational surrogate. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On September 13, 2013, DHS held an FSP Revision Meeting, and the goal for the children was changed to adoption. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). None of the parents attended the Revision Meeting. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The FSP Objectives remained the same. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

At the Permanency Review Hearing on November 21, 2013 held before Juvenile Master Carol Carson, the Court ordered the children remain as committed to DHS. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The Court also found that Mother was discharged from ARC due to non-participation. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The Court also found that Mother did not make herself available to DHS or the provider agency for the weekly supervised visits with the children. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The Court referred Mother to the CEU for a forthwith drug screen, assessment and monitoring. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). The Court also modified Mother's visitation with the children to monthly visits. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

8

On January 20, 2014, Mother entered a residential drug and alcohol treatment program through Fresh Start. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

At the Permanency Review Hearing on February 3, 2014 held before this Court, this Court ordered that the children remain as committed to DHS, and the children's placement plans were changed to adoption. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). This Court referred Mother to the CEU for a forthwith drug screen, assessment and monitoring. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). This Court also referred Mother to the ARC program. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights).

On September 18, 2014, this Court involuntarily terminated Mother's parental rights to E.J.B.C., J.A.H. and E.C.C. Thereafter, Mother filed an Appeal on October 14, 2014.

## LEGAL ANALYSIS

In articulating the appellate standard of review of a termination of parental rights, the Superior Court has stated,

> We are bound by the findings of the trial court, which have adequate support in the record so long as the findings do not evidence a capricious disregard for competent and credible evidence. *In re Diaz*, 447 Pa. Super. 327, 669 A.2d 372 (Pa. Super. 1995). Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by finder of fact. *In re B.G.S.*, 418 Pa. Super. 588, 614 A.2d 1161 (Pa. Super. 1992).

*In re: Adoption of A.C.H.*, 2002 Pa. Super 218, P4; 803 A.2d 224, 228 (2002)

9

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. *See In re K.C.W.*, 456 Pa.Super. 1, 689 A.2d 294, 298 (1997). Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. *Id.* Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. *See In re Child M.*, 452 Pa.Super. 230, 681 A.2d 793, 800 (1996). We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence. *See In re Matsock*, 416 Pa.Super. 520, 611 A.2d 737, 742 (1992). *In re C.S.*, 2000 PA Super 318, 761 A.2d 1197, 1199 (Pa.Super. 2000). It is clear that in a termination proceeding, the focus is on the conduct of the parents. *In the Interest of A.L.D.*, 2002 PA Super 104, 797 A.2d 326 (Pa.Super. 2002); *In the Interest of M.D.*, 449 Pa. Super. 507, 674 A.2d 702 (Pa.Super. 2002).
*In the Matter of B.L.W.*, 2004 Pa. Super 30, P9; 843 A.2d 380, 383 (2004).

This Court found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa. C.S.A. §§ 2511(a) (1), (2), (5), & (8).[2]

The record demonstrates Mother's ongoing unwillingness to provide care or control for the children or perform any parental duties and her failure to remedy the conditions that brought the children into care. The documents and testimony discussed

---

[2] (a) *General Rule.* --The rights of a parent regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

10

below provided this Court clear and convincing evidence that termination of Mother's parental rights would be in the best interest of E.J.B.C., J.A.H. and E.C.C.

Mother's FSP Objectives were established on October 31, 2012. (Statement of Facts: E.C.C., attached as Exhibit "A" to Petition for Involuntary Termination of Parental Rights). Mother was ordered to comply with parenting classes, provide safe and adequate living conditions once released from prison, receive drug and alcohol treatment, maintain communication with DHS and the Provider Agency, receive ARC services and provide where whereabouts when released from prison. (N.T. 9/18/2014, p. 10, lines 22-25); (N.T. 9/18/2014, p. 11, lines 1-8). The record shows that Mother has complied with her FSP Objectives.

Mother has failed to comply with her parenting FSP Objective. Mother was referred to ARC twice. (N.T. 9/18/2014, p. 12, lines 1-8). However, Mother failed to comply with the parenting classes resulting in her discharge from the program. (N.T. 9/18/2014, p. 12, lines 9-16).

Mother has failed to comply with her drug and alcohol treatment FSP Objective. After every Court date, Mother has been referred to CEU for a drug and alcohol assessment, but has only attended the drug screens not the assessments. (N.T. 9/18/2014, p. 12, lines 17-20); (N.T. 9/18/2014, p. 13, lines 22-25); (N.T. 9/18/2014, p. 14, lines 1-3). Mother's drug screens came back positive. (N.T. 9/18/2014, p. 14, lines 4-8). She was referred to CEU because of past drug related offenses which led to her incarceration. (N.T. 9/18/2014, p. 13, lines 2-4). Mother has been incarcerated three times throughout the duration of this matter. (N.T. 9/18/2014, p. 13, lines 10-12).

Mother has also failed to comply with her housing FSP Objective. When Mother was first released from jail in March 2013, she did not have housing. (N.T. 9/18/2014, p.

11

14, lines 16-21). After being released from jail in May 2014, Mother again did not have appropriate housing for the children. (N.T. 9/18/2014, p. 15, lines 2-7). DHS provided Mother an ARC referral for housing, but she did not complete the programs. (N.T. 9/18/2014, p. 16, lines 22-25); (N.T. 9/18/2014, p. 17, lines 1-3).

Finally, Mother has failed to comply with her visitation FSP Objective. Mother has not consistently followed the visitation schedule throughout the life of this matter. (N.T. 9/18/2014, p. 15, lines 16-17). Her last visit was on July 16, 2013. (N.T. 9/18/2014, p. 15, lines 10-12). Due to Mother's inconsistencies, weekly supervised visits were changed to biweekly supervised visits. (N.T. 9/18/2014, p. 15, lines 20-25); (N.T. 9/18/2014, p. 16, line 1).

Based upon the testimony elicited at the Termination Hearing as well as the documents in evidence, this Court found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa. C.S.A. §§ 2511 (a) (1), (2), (5), & (8) as Mother has failed to remedy the conditions that brought the children into care and will not be able to provide adequate care for the children in the foreseeable future.

This Court further found that because there was not a strong bond between Mother and her children, terminating Mother's parental rights would not cause the children irreparable harm and would be in the best interest of the children pursuant to 23 Pa. C.S.A. §2511(b).

This Court heard testimony from the DHS Worker concerning the lack of relationship between Mother and her children in contrast to the bond that exists between E.J.B.C., J.A.H. and E.C.C. and their respective foster parent.

The DHS Worker testified the children have developed a parental bond with the caregiver since being in her care for the past two years. (N.T. 9/18/2014, p. 18, line 1);

12

(N.T. 9/18/2014, p. 18, lines 12-14); (N.T. 9/18/2014, p. 19, lines 5-7). The DHS Worker further testified,

> [G]randmother is very attentive to [E.C.C.'s] needs, showing all of his daily basic needs are being met. I watched her help him with his homework, just a very good relationship.

(N.T. 9/18/2014, p. 18, lines 3-6).

The DHS Worker also provided similar testimony regarding J.A.H. and E.J.B.C. testifying,

> [J.A.H.] was very into Michael Jackson and I would see [Maternal Grandmother], you know, play videos and things for him so he could dance and, you know, just a really good relationship. She really talked about his birthday a lot. So his birthday was a big thing in the family to have like get-together, barbeques, things of that nature.

(N.T. 9/18/2014, p. 18, lines 18-24).

> [E.J.B.C.] does have sickle cell anemia. [Maternal Grandmother] is on top of all of his appointments. Anytime, she has to take off of work because he gets sick, you know, she's right there. So they have a pretty good relationship, I would say as well.

(N.T. 9/18/2014, p. 19, lines 7-11).

In addition, the DHS Worker testified that the children do not ask about their Mother. (N.T. 9/18/2014, p. 19, lines 15-17).

The DHS Worker testified further that E.J.B.C., J.A.H. and E.C.C. would not suffer irreparable harm if Mother's parental rights were terminated, and that a goal change to adoption would be in the children's best interest. (N.T. 9/18/2014, p 19, lines 18-25); (N.T. 9/18/2014, p. 20, lines 1-4); (N.T. 9/18/2014, p. 20, lines 15-18); (N.T. 9/18/2014, p. 33, lines 5-7); (N.T. 9/18/2014, p. 34, lines 3-12). The testimony of the DHS Worker was deemed credible and accorded great weight.

As the testimony before this Court on September 18, 2014 indicates, the evidence is clear and convincing that Mother did not remedy the conditions that caused her

13

children to come into care and thus has been and continues to be unable to provide proper care for her children, warranting involuntary termination of Mother's parental rights pursuant to 23 Pa. C.S. 2511(a) (1), (2), (5), & (8). This Court further concluded that termination of Mother's parental rights would be in the best interest of E.J.B.C., J.A.H. and E.C.C.

## CONCLUSION

This Court, after careful review of the findings of fact, the testimony presented on September 18, 2014 and the law of the Commonwealth of Pennsylvania, finds clear and convincing evidence to terminate Mother, T.C.'s parental rights pursuant to 23 Pa. C.S. 2511(a)(1), (2), (5), & (8). This court further finds that, pursuant to 23 Pa. C.S. 2511(b), termination of T.C.'s parental rights would not have a detrimental effect on the children and would be in the children's best interest. For the foregoing reasons, this Court respectfully requests that the September 18, 2014 Order terminating Mother, T.C.'s parental rights to E.J.B.C., J.A.H. and E.C.C. be **AFFIRMED**.

**BY THE COURT:**

_Nov. 5, 2014_
Date

_Allan L. Tereshko_
**ALLAN L. TERESHKO, J.**

14

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above-captioned Opinion was filed on __11|5|14__ in the Court of Common Pleas of Philadelphia County Family Court Division and served by first class mail upon the following:

Caitlin Dunston, Esq.
Counsel for DHS
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA 19102

Jeffrey C. Bruch, Esq.
Counsel for Mother
1500 JFK Blvd, Suite 200
Philadelphia, PA 19102

Pamela Ende, Esq.
Attorney for the Children
Support Center for Child Advocates
1900 Cherry Street
Philadelphia, PA 19103

DATE: __Nov. 5, 2014__

_____
ALLAN L. TERESHKO, J.

15